IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACLYN VASQUEZ, AND CHARNETTE NUTALL on behalf of themselves and all other plaintiffs similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>TOUHY FRUITY, INC., KEVIN TAN-HUNG DUONG, individually AND KELLI DUONG, individually<br><br>Defendants. | No. 1:21-cv-<br><br>**Hon.**<br>**District Court Judge**<br><br>Hon.<br>Magistrate Judge<br><br>*JURY DEMAND* |

## COMPLAINT

NOW COMES Plaintiffs, **JACLYN VASQUEZ, AND CHARNETTE NUTALL** (each a "Plaintiff", collectively the "Plaintiffs"), on behalf of themselves and all other plaintiffs similarly situated, known and unknown, by and through their attorneys, JOHN W. BILLHORN AND SAMUEL D. ENGELSON OF BILLHORN LAW FIRM, and for their Complaint against Defendants, **TOUHY FRUITY, INC., KEVIN TAN-HUNG DUONG AND KELLI DUONG** (each a "Defendant", collectively the "Defendants" or "TFI"), state as follows:

**I.  NATURE OF ACTION**

1.  This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.* and the Illinois Wage Payment and Collection Act, 820 ILCS §115/1 *et seq.* Plaintiff Vasquez individually also asserts a claim for retaliation under the Fair Labor Standards Act, 29 U.S.C. §215(a)(3).

## II. JURISDICTION AND VENUE

2. Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Illinois and municipal statutory claims, pursuant to 28 U.S.C. §1367. Venue lies in the Northern District of Illinois in that during all times relevant to the employment relationship, Plaintiffs performed work in this district and are each a resident of this district and Defendants are or were engaged in business in this district.

## III. THE PARTIES

3. Defendant, **TOUHY FRUITY, INC.** (TFI) owns and operates two food court restaurants located at 3333 W Touhy Ave., 2nd Floor in Lincolnwood, Illinois (Lincolnwood Town Mall Food Court) and 4104 N. Harlem Ave. Norridge, Illinois (Harlem Irving Plaza Food Court). TFI's restaurants serve a variety of smoothies, teas, ice cream, pho soups, and other food and beverage items. TFI is engaged in selling and serving prepared food and beverages to customers for consumption on and off its premises. TFI is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii). During all relevant times, TFI was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

4. Defendants, **KEVIN TAN-HUNG DUONG AND KELLI DUONG** are the owners of TFI (any reference to "TFI" in this Complaint shall include Kevin Tan-Hung Duong and Kelli Duong, such that "TFI" encompasses and refers to all Defendants). In their capacity as owners and operators of TFI, Kevin Tan-Hung Duong and Kelli Duong were vested with the

authority to implement and carry out the wage and hour practices of TFI. Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Kevin Tan-Hung Duong and Kelli Duong, who in turn responded to those communications with the authority described above. Thus, at all times relevant hereto, Kevin Tan-Hung Duong and Kelli Duong were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are each an "employer" and at all times relevant hereto were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are "employers".

5. Plaintiff, **JACLYN VASQUEZ**, ("Plaintiff" or "Vasquez") is a former employee of Defendants who, between approximately June 2020 and April 2021, was employed by Defendants as a kitchen worker and manager. Plaintiff performed duties such as food preparation, cooking and general kitchen duties for Defendants as assigned by Defendants. Plaintiff received only her straight time pay for all hours worked in excess of 40 in individual work weeks and did not receive an overtime premium for overtime eligible hours worked over 40 in individual work weeks. Plaintiff was regularly denied overtime pay by Defendants for hours worked over 40 per work week. Additionally, TFI deducted money from Plaintiff's total weekly wages for what TFI called "taxes" but failed to provide Plaintiff with any end-of-year tax document or other receipt or proof as to the true purpose of said deductions. Therefore, these deductions amounted to unauthorized deductions from wages carried out without compliant wage deduction authorization forms in violation of the IWPCA. Lastly, Vasquez,

individually, asserts a claim of retaliation under the FLSA against Defendants pursuant to 29 U.S.C. §215(a)(3).

6. Plaintiff, **CHARNETTE NUTALL,** ("Plaintiff" or "Nutall") is a current of Defendants who has worked for them since July 2020. Nutall is employed by Defendants as a cook and kitchen employee. Plaintiff performs food preparation, cooking and other kitchen duties as assigned by Defendants. Plaintiff received only her straight time pay for all hours worked in excess of 40 in individual work weeks and did not receive an overtime premium for overtime eligible hours worked over 40 in individual work weeks. Plaintiff was regularly denied overtime pay by Defendants for hours worked over 40 per work week. Additionally, TFI deducted money from Plaintiff's total weekly wages for what TFI called "taxes" but failed to provide Plaintiff with any end-of-year tax document or other receipt or proof as to the true purpose of said deductions. Therefore, these deductions amounted to unauthorized deductions from wages carried out without compliant wage deduction authorization forms in violation of the IWPCA.

7. All other unnamed, similarly situated Plaintiffs, known and unknown (hereinafter referred to as "members of the Plaintiff Class" or "similarly situated Plaintiffs"), are past or present employees who work or worked for Defendants, were improperly denied overtime for hours worked in excess of 40 in individual work weeks and had money improperly deducted from earned wages without proper authorization.

8. As employees performing duties for an enterprise engaged in commerce, the named Plaintiffs and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

## IV. STATUTORY VIOLATIONS

### Fair Labor Standards Act

9. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiffs as an opt-in representative or collective action, on behalf of himself and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.* and §251 *et seq.* Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

### Illinois Minimum Wage Law

10. Pursuant to the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.*, Count IV of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiffs herein under the IMWL are proper for certification under Federal Rule of Civil Procedure 23.

### Illinois Wage Payment and Collection Act

11. Pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS §115/1 *et seq.*, Count V of this action is brought by Plaintiffs to recover from Defendants unauthorized deductions taken on or after the date ten (10) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count VI. The claims asserted by Plaintiffs herein under the IWPCA are proper for certification under Federal Rule of Civil Procedure 23.

### Fair Labor Standards Act - Retaliation

12. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §215(a)(3), Count VI of this action is brought by Plaintiff Vasquez, individually, against Defendants for retaliating against her for asserting and expressing her rights under the FLSA arising from Defendant's

failure to pay overtime premiums for hours worked in excess of 40 in individual work weeks. Plaintiff Vasquez seeks additional damages and compensation under the Fair Labor Standards Act.

V.     **FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS**

13. Plaintiffs, at all times pertinent to the cause of action, were employed by Defendants, said employment being integral and indispensable to Defendants' business.

14. During their employments, Plaintiffs handled goods and materials, including perishable food products, which moved in interstate commerce prior to being used or purchased in Illinois.

15. Plaintiffs, on a regular basis within their dates of employment referenced herein, worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half for such hours pursuant to the requirements of the federal and state statutes relied upon herein.

16. Vasquez was employed by TFI from approximately June 2020 to April 2021. From approximately June 2020 to August 2020, Vasquez worked at the Lincolnwood location of TFI. After August 2020 through the end of her employment, Vasquez worked at the Norridge location of TFI, except for one occasion in October 2020 where Vasquez returned to the Lincolnwood location for the day.

17. Vasquez was employed by TFI in a position titled by TFI as "kitchen manager". Vasquez performed traditional kitchen duties such as food preparation, cooking, cleaning, cashier duties, and other related duties as assigned by Defendants.

18. Vasquez's typically worked between 52 and 62 hours per week, but regularly worked even more hours. Oftentimes, Vasquez worked from open to close, approximately

9:00 a.m. or 10:00 a.m. to 9:00 p.m. six (6) and sometimes seven (7) days per week.

19. Over the course of Vasquez's employment, she clocked in and out for her shifts using an electronic time clock program installed on Defendants' computer system. Vasquez clocked in and out of each shift in accordance with Defendants' time-keeping policies.

20. Vasquez's starting hourly rate was $10 per hour. In August 2020, Vasquez received a raise to $11 per hour. At the end of September 2020, Vasquez received another raise to $12, which did not change again during the remainder of her employment with TFI. Defendants Kevin and Kelli Duong informed Vasquez as to what her hourly rate of pay was on numerous occasions.

21. Vasquez almost always worked in excess of 40 hours in individual work weeks as assigned by TFI. Vasquez's contemporaneous timesheets tracked by TFI's electronic timekeeping system reflect hours worked in excess of 40 in individual work weeks for which she was entitled to overtime premiums.

22. Despite working in excess of 40 hours in individual work weeks almost each week of her employment, Vasquez was paid only her applicable straight time rate of pay for all hours worked each week, including said overtime-eligible hours worked in excess of 40.

23. Vasquez was paid straight time for all hours worked, including overtime-eligible hours worked in excess of 40 via cash wages. TFI regularly, if not always, paid Vasquez with cash wages and provided Vasquez with informal receipts of said cash payments. However, Vasquez never received a traditional paystub that reflected her hourly rates of pay, hours worked, tax withholdings, etc.

24. In addition to denying Vasquez overtime premiums for hours worked in excess of 40 in individual work weeks, TFI also improperly deducted money from Vasquez's wages.

Each week, TFI would deduct approximately ten percent (10%) of Vasquez's wages from her take-home pay for "taxes". But TFI never obtained any tax documents from Vasquez at the beginning of her employment or issued Vasquez any end-of-year tax document such as a W-2 or 1099. TFI never provided any documentation or other informing/showing that these deductions contributed in any way to taxes of any kind.

25. TFI never provided Vasquez with a deduction authorization form of any kind. These deductions were carried out by TFI without proper authorization as required by the IWPCA. TFI failed to provide Vasquez, or other similarly situated employees, with deduction authorization forms, as required by the IWPCA.

26. Nutall has been employed by TFI since approximately July 2020. Nutall works primarily at the Norridge location of TFI. Nutall worked at the Lincolnwood location of TFI during her training period after being hired.

27. Nutall is employed by TFI as a kitchen employee. Nutall performs traditional kitchen duties such as food preparation, cooking, cleaning, cashier duties, and other related duties as assigned by Defendants.

28. Nutall is typically scheduled for and works more than 40 hours each week. Nutall regularly works approximately 40-45 hours per week.

29. Over the course of Nutall's employment, she clocked in and out for her shifts using an electronic time clock program installed on Defendants' computer system. Nutall clocked in and out of each shift in accordance with Defendants' time-keeping policies.

30. Nutall was paid approximately $11 per hour over the course of her entire employment with TFI.

31. Nutall regularly worked in excess of 40 hours in individual work weeks as assigned by TFI. Nutall's contemporaneous timesheets tracked by TFI's electronic timekeeping system reflect hours worked in excess of 40 in individual work weeks for which she was entitled to overtime premiums.

32. During Nutall's employment within the relevant period, she received approximately $11.00 per hour and was paid weekly. Nutall was paid her straight time rate of $11.00 per hour for all hours worked each week, including overtime-eligible hours worked in excess of 40 hours in individual work weeks.

33. Nutall was paid straight time for all hours worked, including overtime-eligible hours worked in excess of 40, by handwritten company check.

34. In addition to denying Nutall overtime premiums for hours worked in excess of 40 in individual work weeks, TFI also improperly deducted money from Nutall's wages. Each week, TFI would deduct ten percent (10%) of Nutall's wages from her take-home pay for "taxes". But TFI never obtained any tax documents from Nutall at the beginning of her employment or issued Nutall any end-of-year tax document such as a W-4 or 1099. TFI never provided any documentation or other informing showing that these deductions contributed in any way to taxes of any kind.

35. TFI never provided Nutall with a deduction authorization form of any kind. These deductions were carried out by TFI without proper authorization as required by the IWPCA. TFI failed to provide Nutall, or other similarly situated employees, with deduction authorization forms, as required by the IWPCA.

36. While Plaintiffs were employed with TFI, Defendants Kevin Tan-Hung Duong and Kelli Duong would monitor, supervise, and assign tasks related to the day-to-day

operations of TFI, including implementation and execution of TFI's wage and hour policies. Kelli Duong was understood by Plaintiffs and all other employees to be the primary owner, decision-maker and principal of TFI. Plaintiffs understood that all employment-related inquiries, including questions about TFI's wage and hour policies, were to be directed to the Duongs. Upon information and belief, the Duongs, specifically Kelli Duong, implemented and carried out all wage and hour policies for TFI and all its workers, including the illegal pay practices alleged herein.

37. The Duongs, particularly Kelli Duong, were regularly on location at both of TFI's restaurants to supervise, direct and oversee TFI operations and the work of their employees.

38. Additionally, and in conjunction with other complaints and discussions related to Defendants' payroll practices described above, TFI's electronic time-keeping system responsibilities, including preparation of weekly time reports, weekly payroll calculations, reports and other related tasks, were performed by Kevin and Kelli Duongs' adolescent child. These tasks performed by Defendants' child contributed to non-payment of overtime wages.

39. Plaintiffs were directed by Defendants to raise issues related to time-keeping (i.e. technical issues, missed punches, revisions, etc.) to Defendants' child. Plaintiffs adhered to this directive from Defendants.

40. Defendants' reliance on their adolescent child to carry out the sophisticated accounting and legal requirements of employee time-keeping and payroll operations evidence that the wage violations alleged herein were reckless, in bad faith and without regard for accuracy or compliance.

41. Plaintiffs, particularly Vasquez, made numerous complaints to the Duongs, in their capacity as employers, owners and day-to-day operators of TFI, about Defendants' failure to pay overtime wages and deductions of "taxes" from wages.

42. Throughout the course of their employment, Plaintiffs, and those similarly situated, were denied overtime premiums and had wages improperly deducted by TFI in violation of federal and state law. Upon information and belief, Plaintiffs understood that all hourly employees and workers, including all hourly workers, were paid in the same or similar fashion as described above and were also denied overtime premiums for hours worked in excess of 40 in individual work weeks and were deprived of wages via illegal deductions.

43. Plaintiffs worked in excess for forty (40) hours in many, if not all, workweeks during their employment without pay at a rate of time and one half their regular hourly rates of pay for such hours.

44. Plaintiffs were denied time and one half their regular rates of pay for hours worked, over 40 in a workweek pursuant to the requirements of the federal, state and local statutes relied upon herein.

45. The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of working hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Defendants, in that Defendants recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Defendants lack the records required by 29 CFR Part 516, Plaintiffs and the Plaintiff class will be capable of providing reasonable estimates of that time, as permitted by law.

46. The claims brought herein by the named Plaintiffs are based on non-compliant practices and policies implemented by Defendants and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-46. Paragraphs 1 through 46 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 46 of this Count I.

47. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*, Plaintiffs are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times the regular rates of pay for all hours worked in excess of forty (40) hours, in any week during the two (2) years preceding the filing of this action.

48. Defendants have at all times relevant hereto failed and refused to pay compensation to Plaintiffs, and the Plaintiff Class, as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a) back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b) prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c) Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and,

(d) such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-48. Paragraphs 1 through 48 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 48 of Count II.

49. Defendants' actions as complained of above were done with Defendants' knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether or not the policies and practices were in violation of those statutes. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

50. Pursuant to the Fair Labor Standards Act, Plaintiffs are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a) back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b) prejudgment interest with respect to the amount of unpaid overtime compensation;

(c) Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(d) such additional relief the Court deems appropriate under the circumstances.

## COUNT III

### LIQUIDATED DAMAGES
### UNDER THE FAIR LABOR STANDARDS ACT

1-50. Paragraphs 1 through 50 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 50 of Count III.

51. In denying Plaintiffs compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

52. Plaintiffs are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a) liquidated damages equal to the amount of all unpaid compensation;

(b) Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c) for such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

1-52. Paragraphs 1 through 52 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 52 of this Count IV.

53. As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Illinois Minimum Wage Law, 820 ILCS §115/1 *et seq.*

54. The Illinois Minimum Wage Law provides that an employer who fails to pay the required amount of wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid wages and for (a) an additional statutory interest penalty of 2% amount of the amount of such underpayments for each month following the date such underpayments that remain unpaid through February 18, 2019 and (b) treble the amount of the underpayments and a statutory interest penalty in the amount of 5% of the underpayments each month for damages incurred thereafter.

55. Defendants' failure to pay compensation as described above, has been willful and/or in bad faith.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a) declaring and decreeing Defendants' compensation practices as described herein, and such other violations which may come to light during the prosecution of this matter, in violation of the provisions of the Illinois Minimum Wage Law;

(b) awarding an amount of damages, to be shown by the evidence, to which Plaintiffs are entitled;

(c) allowing this Court to retain jurisdiction of the case until such time it is assured Defendants have remedied the compensation policies and practices complained of herein and are determined to be in full compliance with the law;

(d) directing Defendants to pay to Plaintiffs' reasonable attorneys' fees, costs, and litigation expenses, as provided by statute;

## COUNT V

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE ILLINOIS WAGE PAYMENT AN COLLECTION ACT

1-55. Paragraphs 1 through 55 of Count VI are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 55 of this Count V.

56. Plaintiffs, and members of the Plaintiff Class, were each an "employee" under the IWPCA, 820 ILCS § 115/2.

57. Plaintiffs, and members of the Plaintiff Class, were not exempt from the IWPCA's protections, 820 ILCS § 115/1, *et seq*.

58. Defendants were each an "employer" under the IWPCA, 820 ILCS § 115/2.

59. During the course of employment of Plaintiffs and the Plaintiff class, Defendants made deductions from wages for what Defendants informed Plaintiffs were "taxes". However, Defendants' conduct suggests that these deductions did not contribute to proper payroll withholdings or other pertinent taxes and were instead used for purposes that violated the IWPCA.

60. Such deductions (1) were not required by law; (2) were not to the benefit of Plaintiffs or the Plaintiff Class; (3) were not in response to a valid wage assignment or wage deduction order; and (4) were not made pursuant to a valid and compliant authorization form, signed and dated by Plaintiffs or members of the Plaintiff Class.

61. Defendants violated the IWPCA, 820 ILCS 115/9, by making unauthorized and unlawful deductions from wages.

62. Plaintiffs were damaged by Defendants' violation of the IWPCA.

63. Plaintiffs seeks certification of the IWPCA violations alleged herein pursuant to Federal Rule of Civil Procedure 23.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding them:

(a) A judgment in an amount to be determined at trial for all of the earned wages, agency withholding deposits and final compensation due to Plaintiffs;

(b) Statutory interest damages in the amount of two percent (2%) per month of the amount of underpayments.

(c) Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

(d) for such additional relief the Court deems just and appropriate under the circumstances.

## COUNT VI

## RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

### Jaclyn Vasquez vs. Touhy Fruity, Inc., Kevin Tan-Hung Duong, individually and Kelli Duong, individually

1-63. Paragraphs 1 through 63 of Count V are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 63 of this Count VI.

64. As alleged, *supra*, Defendants failed to pay to Vasquez proper overtime wages for hours worked in excess of 40 in individual work weeks pursuant to the FLSA. Defendants' failure to pay overtime wages occurred over the course of Vasquez's entire employment.

65. Beginning approximately August 2020, Defendants began assigning Vasquez over 40 hours per week in conjunction with the opening of a second TFI location. Defendants began scheduling Vasquez to work at least sixty (60) hours per week. After receiving her wages for these additional hours, Vasquez noticed that she was not receiving overtime premiums for hours worked in excess of 40 in individual work weeks.

66. In November 2020, Vasquez first complained to Defendants, specifically Kelli Duong, about Defendants' failure to pay overtime premiums. Vasquez informed Kelli Duong that she was not receiving overtime pay and advised that Defendants should be paying her overtime premiums for hours worked over 40 each week. Kelli Duong dismissed Vasquez's complaints and advised that Vasquez not to worry or concern herself with the lack of overtime

premiums.

67. In December 2020, after regularly working 60+ hour weeks without overtime premiums, Vasquez again complained to Kelli Duong about Defendants' failure to pay overtime premiums after Kelli Duong asked Vasquez to work 6:00 a.m. to 10:00 p.m. on "Black Friday" following the Thanksgiving holiday. Vasquez explained to Kelli Duong that she preferred not to work such a long shift since she would not receive overtime premiums for that 16-hour shift, consistent with TFI's continued failure to pay Vasquez overtime premiums for all other overtime hours. Vasquez explained that she would be more inclined to work the extra-long shift if TFI paid overtime. Kelli Duong told Vasquez that Vasquez did not understand what overtime was and that TFI did not need to pay overtime before again advising Vasquez not to concern herself with the lack of overtime pay. Vasquez worked approximately ten (10) hours on Black Friday in 2020, from approximately 6:00 a.m. to 4:00 p.m. Like all other weeks during Vasquez's employment with TFI, Vasquez did not receive overtime pay that week.

68. In December 2020, after Vasquez continued to work open to close almost every day, Vasquez informed Kelli Duong that if TFI continued their failure to pay overtime for hours worked over 40 that Vasquez would not be able to work TFI any longer. Kelli Duong once again dismissed Vasquez's complaints about unpaid overtime premiums for hours worked in excess of 40.

69. Beginning January 2021, approximately one week after Vasquez's December 2020 complaint to Kelli Duong about TFI's failure to pay overtime premiums, TFI and Kelli Duong substantially reduced Vasquez's working hours. Instead of scheduling Vasquez for 60+ hours per week, customary hours and wages that Vasquez depended on, TFI only

scheduled Vasquez for 38 to 42 or 43 hours per week, while still failing to pay overtime premiums for those two to three overtime hours worked each week. By cutting approximately 20+ hours from Vasquez's schedule following her complaints to Defendants about overtime pay, Vasquez earned hundreds of dollars less per week as a direct result of Defendants' discriminatory and retaliatory action of reducing Vasquez's hours.

70. Following and in direct response to Vasquez's numerous complaints to TFI and Kelli Duong about Defendants' failure to pay overtime premiums for hours worked in excess of 40, TFI intentionally and maliciously reduced Vasquez's schedule. Defendants continued said reduction of Vasquez's work hours from approximately January 2020 until she separated from Defendants in approximately March or April of 2021.

71. In direct retaliation for Vasquez asserting her rights under the FLSA as described above, Defendants reduced the work hours of Vasquez in order to discriminate against and punish Vasquez for questioning Defendants' illegal pay practices, including failure to pay overtime premiums for hours worked in excess of 40 in individual work weeks.

72. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §215(a)(3), it is illegal for an employer to retaliate against an employee for asserting rights under the statute.

73. Defendants' acts of retaliation against Plaintiff Vasquez in response to assertion of her lawful FLSA rights violated the Fair Labor Standards Act, 29 U.S.C §215(a)(3).

WHEREFORE, Plaintiff Vasquez respectfully requests this Court to enter an order:

(a) awarding back pay equal to the amount of all wages lost by Vasquez as a result of the retaliatory acts complained of herein;

(b) awarding prejudgment interest with respect to the total amount of all lost wages;

(c) awarding Vasquez punitive damages against Defendants in an amount in excess of One Million Dollars ($1,000,000.00);

(d) awarding Vasquez's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act;

(e) for such additional relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

*Electronically Filed 08/30/2021*

s/John W. Billhorn
John William Billhorn

John W. Billhorn
Samuel D. Engelson
BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 401
Chicago, IL 60604
(312) 853-1450

Attorneys for Plaintiffs